**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

RECEIVED

2021 MAR 16 P 1:39

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

**CHRISTOPHER KILBURN,**          )

          )

**Plaintiff,**          )

          )

**v.**          )          **Case No.:**

          )

**FOLEY PRODUCTS COMPANY,**          )          **JURY DEMANDED**
**INC.,**          )

          )

**Defendant.**          )          2:21-cv-00225-JTA

          )

## COMPLAINT

**COMES NOW** Plaintiff, Christopher Kilburn ("Plaintiff"), by and through his undersigned counsel of record, and files this Complaint against Defendant Foley Products Company, Inc. ("Defendant"). As grounds for this Complaint, Plaintiff states the following:

## JURISDICTION AND VENUE

1.      Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2).

2.      The unlawful employment practices described herein were committed in Clanton, Alabama. Clanton is located in Chilton County, Alabama, and, accordingly, venue lies in the United States District Court for the Middle District of Alabama, Northern Division, pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3.      Plaintiff is a citizen of the United States of America, over the age of nineteen (19) years, a resident of the State of Alabama who is entitled to protection pursuant to the

provisions of 29 U.S.C. § 2611(2), and was at all times relevant, an "employee" of Defendant within the meaning of 29 U.S.C. § 2611(3).

4.      Defendant is a foreign corporation functioning within the State of Alabama, is an "employer" within the meaning of 29 U.S.C. § 2611(4), and was at all times relevant Plaintiff's "employer."

## FACTS

5.      Plaintiff re-alleges and incorporates paragraphs one (1) through four (4) as if fully set forth herein.

6.      Defendant is an employer under the applicable provisions of the Family Medical Leave Act ("FMLA"), and was, in fact, Plaintiff's employer at all times relevant to this cause of action.

7.      Defendant employed more than fifty (50) employees within a seventy-five (75) mile radius for each working day during each of the twenty (20) or more calendar workweeks in the current and/or preceding calendar year.

8.      On September 10, 2018, Defendant hired Plaintiff to work in its maintenance department.

9.      Plaintiff performed maintenance duties for Defendant, including but not limited to industrial, mechanic, and operator tasks; liaised between customers and Defendant; ordered parts; maintained inventory; conducted safety audits; and completed other tasks as needed.

10.     Plaintiff was employed by Defendant for more than twelve (12) months before he requested FMLA leave, having worked for Defendant almost two (2) years at the time of his request.

11.     Plaintiff worked more than one thousand two hundred and fifty (1,250) hours during the twelve (12) months prior to the start of his FMLA leave.

12.     Therefore, Plaintiff was an eligible employee under the applicable provisions of the FMLA.

13.     In October 2018, Plaintiff's wife was diagnosed with stage three (3) breast cancer.[1]

14.     As Plaintiff's wife initially required little additional care and Plaintiff's mother was able to live with Plaintiff's family, Plaintiff did not need FMLA leave at that time.

15.     However, in or about January 2020, Plaintiff's mother became ill and could no longer care for Plaintiff's wife.

16.     As a result, in or about February 2020, Plaintiff requested a modified work schedule from his Supervisor and Plant Manager Keith Boggus ("Boggus").

17.     Boggus denied Plaintiff's request for a modified work schedule.

18.     Therefore, on March 17, 2020, Plaintiff requested intermittent FMLA leave to care for his wife.

---

[1] In or about April 2020, Plaintiff's wife developed stage four (4) cancer.

19.     On March 18, 2020, Plaintiff received a letter from Human Resource ("HR") Generalist, Kristine Thorne ("Thorne").

20.     The letter informed Plaintiff that he could be eligible for FMLA leave.

21.     On March 18, 2020, Thorne also provided Plaintiff with a "Notice of Eligibility and Rights & Responsibilities" ("Notice").

22.     The Notice indicated Plaintiff was eligible for FMLA leave.

23.     As Plaintiff was eligible for FMLA leave, Defendant indicated it would send over the necessary medical certification forms for Plaintiff to complete.

24.     However, Plaintiff did not initially receive the forms.

25.     Plaintiff continuously requested updates regarding the FMLA forms.

26.     However, Defendant made excuses as to why the FMLA forms had not been provided.

27.     To cover the days Plaintiff missed while caring for his wife and waiting on FMLA leave approval, Plaintiff requested to use his vacation days.

28.     However, Defendant did not apply the vacation days in accordance with Plaintiff's requests.

29.     Finally, on or about June 2, 2020, Plaintiff received the FMLA medical certification forms from Defendant.

30.     In or about July 2020, Plaintiff returned the completed forms to Defendant.

31.     Defendant ultimately approved Plaintiff's request for intermittent FMLA leave.

32.     Plaintiff used the intermittent FMLA leave to care for his terminally ill wife.

4

33.     Plaintiff transported his wife to appointments for blood transfusions and chemotherapy treatments.

34.     The appointments were scheduled for two (2) Mondays in a row, then one (1) Monday off.

35.     Plaintiff provided Defendant with advanced notice of these absences.

36.     However, Plaintiff would occasionally receive last minute notice that his wife needed an emergency blood transfusion.

37.     Plaintiff would then promptly notify Defendant that he needed to be absent to care for his wife.

38.     On August 7, 2020, Plaintiff used FMLA leave to take his wife to have various medical scans conducted.

39.     At 6:13 p.m. on August 7, 2020, Boggus texted Plaintiff and indicated that Plaintiff needed to come into work on August 8, 2020 to repair Defendant's concrete mixer.

40.     Although Plaintiff was not scheduled or planning to work on August 8, 2020, he nonetheless agreed to come in.

41.     When Plaintiff arrived at work on August 8, 2020, he informed Boggus that he could only work for a few hours before he would need to leave to care for his wife and children.

42.     Plaintiff then discovered he could not make the necessary repairs to Defendant's concrete mixer because it had not been cleaned prior to his arrival.

43.     Cleaning the concrete mixer is the worst job an employee can be given.

5

44.     To clean and prepare the mixer, an employee has to crawl inside the small, confined space and then use a pneumatic powered air chisel (i.e., a jack hammer) to chisel away at the concrete.

45.     Cleaning the mixer is a task that takes five (5) or more hours to complete when done correctly.

46.     Plaintiff informed Boggus that the mixer was not clean and that it should have been cleaned before his arrival.

47.     Plaintiff further informed Boggus that it would take hours for him to clean the mixer before he could make the necessary repairs.

48.     Boggus was aware that the mixer had not been cleaned.

49.     However, Boggus made numerous excuses and refused to acknowledge the hours it would take for Plaintiff to clean the mixer before he could make repairs.

50.     After Plaintiff worked several hours, he informed Boggus that he needed to leave.

51.     Boggus did not object to Plaintiff leaving.

52.     Plaintiff thereafter left to care for his wife and children.

53.     On August 10, 2020, Plaintiff used FMLA leave to take his wife to a chemotherapy appointment.

54.     During the appointment, Plaintiff was informed that, on August 11, 2020, his wife would need an emergency blood transfusion.

55.     Plaintiff promptly informed Boggus that he would need to be off on August 11, 2020, to care for his wife.

6

56.     However, Plaintiff offered to work in the evening on August 11, 2020.

57.     At 9:00 a.m. on August 11, 2020, Boggus responded to Plaintiff and stated that Defendant had terminated Plaintiff's employment.

58.     Boggus cited "job abandonment" as the alleged reason for Plaintiff's termination.

59.     Plaintiff did not abandon his job.

60.     On the afternoon of August 11, 2020, Plaintiff picked up his personal belongs from Defendant's location in Clanton, Alabama.

61.     While there, District Manager, Brian Mann ("Mann"), gave Plaintiff a termination form.

62.     The termination form cited alleged "insubordination" as the reason for Plaintiff's termination.

63.     The form did not provide any additional information regarding Plaintiff's alleged "job abandonment" or "insubordination."

64.     At the time of Plaintiff's termination, he was using intermittent FMLA leave to care for his terminally ill wife.

65.     Plaintiff still had intermittent FMLA leave available.

66.     Despite Plaintiff's qualification under the FMLA, Defendant interfered with Plaintiff's use of intermittent leave and retaliated against him for the same.

67.     Defendant interfered with and retaliated against Plaintiff when it contacted Plaintiff while he was out on leave to ask him to work, mistreated Plaintiff when he came to work, and terminated Plaintiff's employment while he was out on FMLA leave.

7

68.    Defendant's unlawful actions resulted in significant financial and emotional damage to Plaintiff.

## COUNT I
## FMLA INTERFERENCE

69.    Plaintiff re-alleges and incorporates paragraphs six (6) through seven (7) and ten (10) through twelve (12) as if fully set forth herein.

70.    Plaintiff requested intermittent FMLA leave to care for his wife who has a serious health condition, to wit: breast cancer.

71.    Defendant delayed sending the FMLA medical certification forms to Plaintiff.

72.    After finally sending the forms to Plaintiff and receiving completed versions of the same, Defendant granted Plaintiff's request for intermittent FMLA leave.

73.    On August 7, 2020, while Plaintiff was out on FMLA leave, Boggus texted Plaintiff and indicated Plaintiff needed to come into work on August 8, 2020.

74.    On August 10, 2020, while Plaintiff was out on FMLA leave and at his wife's chemotherapy appointment, Boggus informed Plaintiff that Defendant had terminated Plaintiff's employment.

75.    At the time of Plaintiff's termination, he still had intermittent FMLA leave available.

76.    Plaintiff did not abandon his job and was not insubordinate.

77.    Therefore, Defendant interfered with benefits to which Plaintiff was entitled under the FMLA.

8

78.     Defendant's interference with Plaintiff's rights under the FMLA violated the FMLA, 29 U.S.C. § 2615(a)(1), which states it "shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under this title."

79.     Defendant's actions resulted in significant financial and emotional damage to Plaintiff.

## COUNT II
## FMLA RETALIATION

80.     Plaintiff re-alleges and incorporates paragraphs six (6) through seven (7) and ten (10) through twelve (12) as if fully set forth herein.

81.     Plaintiff requested FMLA leave to care for his wife due to her serious health condition, to wit: breast cancer.

82.     Defendant delayed sending the FMLA medical certification forms to Plaintiff.

83.     While seeking FMLA leave, Plaintiff attempted to use vacation days to cover the days missed while caring for his wife, but Defendant did not apply the vacation days in accordance with Plaintiff's requests.

84.     After finally sending the forms to Plaintiff and receiving completed versions of the same, Defendant granted Plaintiff's request for intermittent FMLA leave.

85.     On August 7, 2020, Plaintiff used FMLA leave to take his wife to have various medical scans conducted.

9

86.     At 6:13 p.m. on August 7, 2020, Boggus texted Plaintiff and indicated that Plaintiff needed to come into work on August 8, 2020.

87.     Even though Plaintiff was not scheduled to work on August 8, 2020, he nonetheless agreed to come in.

88.     When Plaintiff arrived at work on August 8, 2020, he informed Boggus that he could only work for a few hours before he would need to leave early to care for his wife and children.

89.     Plaintiff then discovered he could not make the necessary repairs to the concrete mixer because it had not been cleaned prior to his arrival.

90.     Cleaning the concrete mixer is the worst job an employee can be given as it requires crawling inside the small, confined space and using a pneumatic powered air chisel (i.e., a jack hammer) to chisel away at the concrete.

91.     Cleaning the mixer is a task that takes five (5) or more hours to complete when done correctly.

92.     Plaintiff informed Boggus that the mixer was not clean, it should have been cleaned before his arrival, and it would take hours for Plaintiff to clean the mixer before he could make the necessary repairs.

93.     Boggus was aware that the mixer had not been cleaned and the time it would take to do so, but made numerous excuses and refused to acknowledge the time required.

94.     After Plaintiff worked several hours, he informed Boggus that he needed to leave.

10

95.     When Boggus did not object to Plaintiff leaving, Plaintiff left to care for his wife and children.

96.     On August 10, 2020, Plaintiff used FMLA leave to take his wife to a chemotherapy appointment.

97.     When Plaintiff was informed that, on August 11, 2020, his wife would need an emergency blood transfusion, he promptly informed Boggus to request that day off.

98.     Plaintiff also offered to work in the evening on August 11, 2020.

99.     However, at 9:00 a.m. on August 11, 2020, Boggus responded to Plaintiff and stated that Defendant had terminated Plaintiff's employment.

100.    Boggus cited "job abandonment" as the alleged reason for Plaintiff's termination, but Plaintiff did not abandon his job.

101.    On the afternoon of August 11, 2020, Plaintiff picked up his personal belongs from Defendant's location in Clanton, Alabama, at which time Mann gave Plaintiff a termination form.

102.    The termination form cited alleged "insubordination" as the reason for Plaintiff's termination, but did not provide any additional information regarding Plaintiff's alleged "job abandonment" or "insubordination."

103.    At the time of Plaintiff's termination, he was using intermittent FMLA leave.

104.    Defendant terminated Plaintiff's employment because he exercised his rights under the FMLA, which is statutorily protected conduct.

105.    Defendant's retaliatory termination of Plaintiff's employment willfully violated the FMLA, 29 U.S.C. §§ 2601, et seq.

11

106.   Defendant's actions in violation of the FMLA, 29 U.S.C. §§ 2601, et seq., resulted in significant financial and emotional damage to Plaintiff.

**WHEREFORE,** Plaintiff respectfully requests this Court grant to Plaintiff the following:

A. Back pay for lost income and any other compensatory damages;

B. Reinstatement or front pay if the Court determines reinstatement is impracticable;

C. Liquidated damages equal to the amount of back pay;

D. A reasonable attorneys' fee;

E. Plaintiff's costs and expenses;

F. Interest on all monies owed; and

G. Any and all other relief the Court deems just and appropriate.

Respectfully submitted on this the 15th day of March 2021.

Jessica M. Wolinsky (ASB-7487-L67O)
Anthony D. Michel (ASB-6809-O64M)
*Attorneys for Plaintiff, Christopher Kilburn*

**WRADY MICHEL & KING**
505 20th Street North, Suite 1650
Birmingham, Alabama 35209
P: (205) 980-5700
F: (205) 994-2819
jessica@wmalabamalaw.com
anthony@wmalabamalaw.com

## **JURY DEMAND**

Plaintiff demands a trial by struck jury.

Respectfully submitted,

*Jessica M. Woloszyn*

**DEFENDANT WILL BE SERVED VIA CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

Foley Products Company, Inc.
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, Alabama 36104